**Jack T. STEWART (Jack T. Stuart) or Any Other Officer of the U. S. District Court, Appellant,**

v.

**Vardaman S. DUNN, Appellee.**

**No. 22081.**

United States Court of Appeals
Fifth Circuit.

June 28, 1966.

592

Kathryn H. Baldwin, Morton Hollander, Attys., Dept. of Justice, Washington, D. C., Robert E. Hauberg, U. S. Atty., Jackson, Miss., John W. Douglas, Asst. Atty. Gen., for appellant.

W. E. Suddath, Jr., Charles Clark, Jackson, Miss., Cox, Dunn & Clark, Jackson, Miss., Watkins & Eager, Jackson, Miss., of counsel, for appellee.

Before RIVES and THORNBERRY, Circuit Judges, and GARZA, District Judge.

THORNBERRY, Circuit Judge.

This is an appeal by the United States Marshal from an order of the United States District Court for the Southern District of Mississippi (hereafter referred to as the "Mississippi District Court") granting a writ of habeas corpus and vacating an order for the arrest of appellee, Vardaman S. Dunn, issued by Judge Allen E. Barrow of the United States District Court for the Northern District of Oklahoma (hereafter referred to as the "Oklahoma District Court"). The question presented in the case is whether the Mississippi District Court erred in holding that the order of arrest issued by Judge Barrow was void. We hold that the Mississippi District Court did so err, and we accordingly reverse that court's order discharging appellee from custody.

The complex and confused events leading up to this appeal arose out of a civil action brought by Hyde Construction Company in the Mississippi District Court against Koehring Company (a non-resident corporation) and others. The complaint, filed on August 30, 1961, sought damages for an alleged breach of contract and prayed for writs of chancery attachment to bind funds of the non-resident defendants in the hands of two named attachment defendants, as provided by §§ 2729–2734, Mississippi Code of 1942. Hyde Construction Company was represented by appellee, an attorney in Jackson, Mississippi.

On September 21, 1961, Koehring filed a motion in the Mississippi District Court to dismiss the action for lack of jurisdiction; to quash the process and return thereon on the ground that it was not doing business in Mississippi; and, in the alternative, for a change of venue to the Oklahoma District Court as the forum of convenience. While these motions were pending in the Mississippi District Court, Hyde Construction Company filed another suit against Koehring and others on September 27, 1961, in the Chancery Court of Hinds County, Mississippi (hereafter referred to as the "Mississippi state court"). This suit was in all material respects the same as the cause of action filed by Hyde in the Mississippi District Court.

On June 15, 1962, the Mississippi District Court entered an order denying Koehring's motions to dismiss and to quash and also denying Koehring's motion for a change of venue. This order was appealed to the Fifth Circuit. While this appeal was pending, Koehring answered in the Mississippi state court, pleading for dismissal or for a stay pending final disposition of the federal suit. Then, on September 19, 1963, this Court held that the federal suit should be transferred under 28 U.S.C. § 1404(a) to the Oklahoma District Court. The Fifth Circuit did not reach the jurisdictional issue. Koehring Company v. Hyde Construction Company, 5th Cir. 1963, 324 F.2d 295. While Hyde's application for rehearing was pending in this Court, the Mississippi state court overruled Koehring's plea in abatement and set a trial date for February 17, 1964.

Koehring then moved the Fifth Circuit on December 16, 1963, to enjoin Hyde and its attorneys and agents from proceeding further with the state court action, on the grounds that it would subject Koehring to harassment and irreparable injury and that it was necessary to protect and effectuate the jurisdiction of this Court and its decision of September 19, 1963, on which Hyde's application for rehearing was still pending. Hyde opposed this motion.

On January 27, 1964, this Court denied Koehring's motion for injunction "without prejudice to appellant's [Koehring's] right to apply to the District Court to which the case was remanded for transfer back." Hyde's application for rehearing was denied by this Court on February 5, 1964, and on February 14 the mandate was issued on this Court's decision of September 19, 1963. This mandate was received by the Mississippi District Court on February 15, 1964, upon

which date Hyde filed a motion in that court to reconsider the change of venue because of changed circumstances or, in the alternative, to consider the action voluntarily dismissed without prejudice. On February 24, 1964, the Mississippi District Court dismissed the case without prejudice. Meanwhile, the trial of the Mississippi state court case had been set for March 9, 1964.

Upon dismissal of the federal suit, Koehring filed in this Court, on March 4, 1964, a petition for mandamus and other relief against Hyde and Judge Mize of the Mississippi District Court. The petition sought the immediate execution of this Court's mandate ordering the transfer of the cause to Oklahoma and a temporary injunction against further proceedings in the Mississippi state court. On March 6, 1964, this Court issued a 10-day show-cause order on the petition and, pending determination, enjoined the parties from proceeding with the case in the state court. The Chancellor in the Mississippi state court then rescheduled the trial in state court for 2:00 P.M. on March 10, 1964. On March 10, however, this Court issued an order holding that the Mississippi District Court had erred in permitting dismissal and in declining to order immediate transfer to the Oklahoma District Court as required by the Fifth Circuit's mandate. This Court stated that its order "shall constitute a transfer to enable the parties to present the matter to the District Court of Oklahoma." The temporary restraining order was vacated as no longer necessary. Also on March 10, the Mississippi state court denied a motion by Koehring for continuance and set trial for 2:00 P.M. on March 11, 1964.

On March 11, Koehring filed in the Oklahoma District Court a motion for temporary restraining order and injunction restraining Hyde and its attorneys from proceeding further in the Mississippi state court case. This motion was heard by Judge Barrow on the morning of March 11. Present at the hearing were counsel for Koehring and appellee's law partner, representing Hyde. At 1:59

P.M., Judge Barrow, while withholding decision on the question raised by Hyde of his jurisdiction over the case, issued a temporary restraining order prohibiting Hyde and its attorneys from proceeding further in the state court action. Koehring's motion for injunction was set for hearing on March 16, 1964. Telegrams reciting that the temporary restraining order had been granted were sent that afternoon to the Chancellor who was presiding over the state court action, and to appellee, who received notice of Judge Barrow's action in open court in the Mississippi state court. The restraining order itself was served on appellee's law partner in Tulsa on March 11 and was served personally on appellee the following day, while he was in the process of trying the state court case.

The state court proceedings began on the afternoon of March 11. At that time, one of Koehring's attorneys announced that he had been advised that a restraining order had been granted by Judge Barrow prior to 2:00 P.M. Upon inquiry by the Chancellor, appellee stated that he wished to proceed with the trial of the case in state court. Later that afternoon, the Chancellor received the telegram to him from Judge Barrow, giving notice of the restraining order. The Chancellor stated that he would defer further action until March 23 unless appellee wished to proceed. Appellee responded that he did. The Chancellor denied Koehring's request for a continuance until March 23. When the proceedings in state court began on March 12, the Chancellor made a statement that all parties were directed to continue with the trial and that anything said to the contrary the previous day was stricken from the record.

In Tulsa on March 12, 1964, Koehring filed a petition for an order to show cause why Hyde and appellee should not be punished for contempt. The petition alleged that Hyde and appellee had actual knowledge of the restraining order and that they had continued in further proceedings in the state court in wilful disregard of that order. Acting on Koeh-

ring's petition, Judge Barrow issued an order to Hyde and appellee to appear before him in Tulsa at 10:00 A.M. on March 14, 1964, to show cause why they should not be held in contempt of court and dealt with accordingly. This order was personally served on appellee's law partner in Tulsa on March 12, and on appellee in Jackson, Mississippi, on March 13.

When the matter was called for hearing in Tulsa on March 14, appellee did not appear either in person or by an attorney. He had not communicated with the Court, nor was any explanation given for his failure to appear. When the hearing opened, Judge Barrow announced that this "is a criminal contempt proceeding," and commenced to take evidence showing the events that had transpired in Mississippi state court, the service of a copy of the show cause order upon appellee on March 13, and the wilful disobedience of the restraining order. At the conclusion of the hearing, Judge Barrow held that Hyde and its attorneys (appellee and appellee's law partner) were in civil contempt of the Court's restraining order. The Court reserved decision on the matter of damages and asked the United States Attorney to prepare an order for appellee's arrest. Judge Barrow stated that a hearing on the criminal contempt of appellee would be held when he was brought before the Court in the Northern District of Oklahoma. Judge Barrow then signed an "Order of Arrest" directed to any United States Marshal commanding the arrest of appellee and directing that he be brought forthwith before the Oklahoma District Court.

On the same day, March 14, the Mississippi state court, in response to a petition by Hyde, issued an order restraining Koehring and its attorneys from procuring the arrest of appellee under color of any authority of Judge Barrow and purporting also to restrain any United States Marshal from arresting appellee until completion of the state court trial.

On Sunday, March 15, appellee petitioned the Mississippi District Court for a writ of habeas corpus, alleging that he was about to be unlawfully detained upon an illegal warrant issued by Judge Barrow. Judge Mize issued an order and writ of habeas corpus, upon which appellee was to be released upon his own recognizance pending hearing on March 20, 1964. The order of arrest issued at the direction of Judge Barrow was executed by the U. S. Marshal on March 16, 1964, but the Marshal was shortly thereafter served with the order and writ issued by Judge Mize and released appellee.

After having been continued from the original setting of March 20, the habeas corpus proceeding came on for hearing before Judge Mize, on March 30, 1964. Appellee was the only witness. On April 10, 1964, Judge Mize entered an opinion in which he found that appellee had not acted out of contempt or lack of respect and held, inter alia, that Koehring had failed to establish a prima facie case entitling it to injunctive relief in the Oklahoma District Court, that the Oklahoma District Court was prohibited by 28 U.S.C. § 2283 from enjoining the Mississippi state court proceedings, that the lack of power in the Oklahoma court to issue an injunction was so clear that there was not substantial issue thereon, that both the federal and state court actions were in personam and could proceed concurrently since there was not any fund in the custody of the court under Mississippi chancery law, that the proceedings in Oklahoma leading up to the issuance of the order of arrest did not comply with the requirements of Rule 42(b), F.R.Crim.P., for criminal contempt proceedings and that, therefore, the proceedings were in civil contempt only and the order of arrest was not valid under the territorial limits of effective service in Rule 4(f), F.R.Civ.P. On April 21, 1964, the Mississippi District Court entered an order declaring the temporary restraining order and the order of arrest issued by the Oklahoma District Court to be void and discharging appellee from the custody of the U. S. Marshal. This appeal followed.

The initial question to be decided is whether or not the order entered by the Mississippi District Court discharging appellee from custody is an appealable order. The applicable statute is 28 U.S.C. § 2253, the pertinent parts of which provide as follows:

"In a habeas corpus proceeding before a circuit or district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit where the proceeding is had.

"There shall be no right of appeal from such an order in a proceeding to test the validity of a warrant to remove, to another district or place for commitment or trial, a person charged with a criminal offense against the United States, or to test the validity of his detention pending removal proceedings."

Appellee contends that this appeal falls within the prohibition of the second paragraph of § 2253. In other words, it is appellee's position that the "order of arrest" issued by Judge Barrow was in fact a "warrant to remove" appellee from Mississippi to Oklahoma and that, therefore, the habeas corpus proceeding before the Mississippi District Court was a proceeding "to test the validity of a warrant to remove" or "to test the validity of his detention pending removal proceedings," or both. The answer to this contention lies in an examination of Rule 40(b), F.R.Crim.P.,[1] in conjunction with § 2253.

■■■ It is obvious from a reading of subsection (b) (1) of Rule 40 that the "warrant" referred to therein is the document upon which the person is *arrested*, which is, in the instant case, the "order of arrest" issued in the Oklahoma District Court. It is equally obvious that the reference to a "warrant of removal" in subsection (b) (3) is a reference to the document upon which the defendant is subsequently *removed* to the district where the prosecution is pending. The language of subsection (b) (3) clearly indicates that the "warrant of removal" is to be issued by the judge of the district in which the defendant is apprehended, rather than by the judge in the district where the prosecution is pending. We therefore hold that the "order of arrest" issued by the Oklahoma District Court cannot be construed to be a "warrant to remove" within the meaning of § 2253 and Rule 40(b) (3).[2] Hence, the order issued by the Mississippi District Court was appealable within the general language contained in the first paragraph of § 2253.

■■■ The next question to be decided is whether the Mississippi District Court erred in holding that the Oklahoma District Court was "without pow-

---

1. The relevant portions of Rule 40(b) provide:
"(b) *Arrest in Distant District.*
(1) *Appearance before Commissioner or Judge.* If a person is arrested upon a *warrant* issued in another state at a place 100 miles or more from the place of arrest, * * * he shall be taken without unnecessary delay before the nearest available commissioner or a nearby judge of the United States in the district in which the arrest was made.
 * * * * *
(3) *Hearing; Warrant of Removal or Discharge.* The defendant shall not be called upon to plead. If the defendant waives hearing, the judge shall issue a *warrant of removal* to the district where the prosecution is pending. If the defendant does not waive hearing, the commissioner or judge shall hear the evidence. If the commissioner hears the evidence he shall report his findings and recommendations to the judge. At the hearing the defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. If it appears from the commissioner's report or from the evidence adduced before the judge that sufficient ground has been shown for ordering the removal of the defendant, the judge shall issue a *warrant of removal* to the district where the prosecution is pending. Otherwise he shall discharge the defendant. * * *" (Emphasis added.)

2. In the present case, the record reflects that no "warrant to remove" was ever issued and that no removal proceedings were ever commenced. Any such proceedings which might have occurred were frustrated by appellee's obtaining a writ of habeas corpus in anticipation of his arrest.

er or authority" to issue the temporary restraining order, the disobedience of which gave rise to the criminal contempt charge. The answer to that question lies in an examination of the scope of a habeas corpus proceeding. It is settled that habeas corpus is not to be used as a substitute for appeal. Barker v. State of Ohio, 6th Cir. 1964, 328 F.2d 582; Buder v. Bell, 6th Cir. 1962, 306 F.2d 71; Larson v. United States, 5th Cir. 1960, 275 F.2d 673; Warring v. Colpoys, 1941, 74 App.DC. 303, 122 F.2d 642, 136 A.L.R. 1025, cert. denied, 314 U.S. 678, 62 S.Ct. 184, 86 L.Ed. 543. Habeas corpus tests only the legality of the restraint, and absent exceptional circumstances, such as the alleged deprivation of a constitutional right, the scope of review on habeas corpus is limited to the examination of the jurisdiction of the court whose action is under attack. Bowen v. Johnston, 1939, 306 U.S. 19, 23, 59 S.Ct. 442, 444, 83 L.Ed. 455; Jurney v. MacCracken, 1935, 294 U.S. 125, 152, 55 S.Ct. 375, 380, 79 L.Ed. 802; Knewel v. Egan, 1925, 268 U.S. 442, 445, 45 S.Ct. 522, 524, 69 L.Ed. 1036; Henry v. Henkel, 1914, 235 U.S. 219, 228, 35 S.Ct. 54, 56, 59 L.Ed. 203; Harrison v. Boles, 4th Cir. 1962, 307 F.2d 928, 931.

That the Mississippi District Court went beyond these permissible limits of review by habeas corpus is clear. The basic holding by the Mississippi District Court was that the temporary restraining order was invalid in that it was issued in violation of 28 U.S.C. § 2283, which provides as follows: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to preserve or effectuate its judgments." Even if we were to assume that the restraining order did not come within the exception contained in § 2283 which allows a court to issue such an order "where necessary in aid of its jurisdiction," we could not uphold the action of the Mississippi District Court. The Supreme Court has clearly held in Smith v. Apple, 1924, 264 U.S. 274, 44 S.Ct. 311, 68 L.Ed. 678, that the application of Section 265 of the Judicial Code, the predecessor of § 2283, did not present a jurisdictional question. The following language appears in that opinion:

"Where a District Court is vested with jurisdiction of a cause—as where diversity of citizenship exists and the matter in controversy is of the requisite value—the question whether as a court of equity it has power to entertain the suit and afford the plaintiff equitable relief, does not present a jurisdictional issue. * * *

"So the question whether, in a suit in equity, the plaintiff is prevented by Section 265 of the Code from obtaining an injunction staying proceedings in a State court, does not present an issue as to 'the jurisdiction' of the District Court. This Section * * * is not a jurisdictional statute. It neither confers jurisdiction upon the District Courts nor takes away the jurisdiction otherwise specifically conferred upon them by the Federal statutes. It merely limits their general equity powers in respect to the granting of a particular form of equitable relief; that is, it prevents them from granting relief by way of injunction in cases included within its inhibitions. In short, it goes merely to the question of equity in the particular bill." Id. 264 U.S. at 278–279, 44 S.Ct. at 313.

This holding has been reiterated in numerous other cases. See, e. g., T. Smith & Son, Inc. v. Williams, 5th Cir. 1960, 275 F.2d 397, 407; First Nat. Bank & Trust Co. of Racine v. Village of Skokie, 7th Cir. 1949, 173 F.2d 1, 4.

■ Thus the question of whether the Oklahoma District Court had the power to issue the restraining order under § 2283 was not a question to be considered under the limited scope of review provided for habeas corpus, since that question did not concern the jurisdiction of the Oklahoma District Court. If the restraining order was erroneously issued, it should have been challenged on direct appeal.

■ With regard to the question of the jurisdiction of the Oklahoma District Court over the case in which the restraining order was issued, it should be noted that this question has now been conclusively decided by the Supreme Court on January 17, 1966, in Koehring Company v. Hyde Construction Co., 1966, 382 U.S. 362, 86 S.Ct. 522, 15 L.Ed.2d 416. As we stated earlier, the Oklahoma District Court not only charged appellee with criminal contempt for disobedience of its restraining order, but it also held both appellee and Hyde Construction Co. in civil contempt. · On appeal of the civil contempt ruling, the United States Court of Appeals for the Tenth Circuit reversed the Oklahoma District Court, holding that at the time the temporary restraining order was issued on March 11, 1964, the Oklahoma District Court had no jurisdiction of the case in which that order was issued, since this Court's order of instanter transfer on May 10, 1964, was insufficient to effect a transfer and the case was not physically received in Oklahoma from the Mississippi District Court until March 16, 1964. Hyde Construction Company v. Koehring Company, 10th Cir. 1965, 348 F.2d 643. The Tenth Circuit's decision was in turn reversed by the Supreme Court. In its opinion, the Supreme Court stated:

"In the special circumstances of this case, we conclude that *the District Court in Oklahoma had acquired jurisdiction on March 11* in accordance with the Fifth Circuit's order for instanter transfer and that the Tenth Circuit erred in vacating the District Court's order on the stated jurisdictional ground. We do not read 28 U.S.C. § 1404(a), providing that 'a district court may transfer any civil action,' as precluding an appellate court, where unusual circumstances indicate the necessity thereof, from ef-

fecting a transfer by direct order." (Emphasis added).

■■ There is still another reason why we cannot sustain the decision of the Mississippi District Court. It is abundantly clear from the record that the express purpose of the temporary restraining order was to give the Oklahoma District Court adequate time in which to determine its own jurisdiction. The law is clear that pending a decision on the question of jurisdiction, a District Court has the power to issue a temporary restraining order in order to preserve existing conditions. United States v. United Mine Workers of America, 1947, 330 U.S. 258, 293, 67 S.Ct. 677, 695, 91 L.Ed. 884; United States v. Shipp, 1906, 203 U.S. 563, 573, 27 S.Ct. 165, 166, 51 L.Ed. 319; Carter v. United States, 5th Cir. 1943, 135 F.2d 858, 861. The power of the Oklahoma District Court to punish appellee for contempt is dependent upon whether the restraining order which appellee disobeyed was a "lawful order" as that term is used in 18 U.S.C. § 401.[3] That the restraining order issued by Judge Barrow was such a "lawful order" is made quite clear by the following language of this Court in Carter v. United States, supra, at 861–862:

"It is now held that, except in case of plain usurpation, a court has jurisdiction to determine its own jurisdiction, and if it be contested and on due hearing it is upheld, the decision unreversed binds the parties as a thing adjudged. * * * Thus United States v. Shipp, 203 U.S. 563, 27 S.Ct. 165, 166, 51 L.Ed. 319, 8 Ann.Cas. 265, was a case of criminal contempt arising from the killing of a man in custody while his case was on appeal to the Supreme Court, that court having ordered 'that all proceedings against the appellant be stayed, and the custody of appellant be retained pending this

---

3. The relevant portion of 18 U.S.C. § 401 provides:
"A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

*     *     *     *     *
(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

appeal', the question being whether the courts of the United States had any jurisdiction over appellant's case. The lower court had declined jurisdiction, so the question was not whether the appellate court had jurisdiction to reverse a wrongful assumption of jurisdiction, but whether it could assert federal jurisdiction for the first time. Justice Holmes said for a unanimous court: '[i]t has been held, it is true, that orders made by a court having no jurisdiction to make them may be disregarded without liability to process for contempt * * *. But even if the circuit court had no jurisdiction to entertain Johnson's petition, and if this court had no jurisdiction of the appeal, this court, and this court alone, could decide that such was the law. *It and it alone necessarily had jurisdiction to decide whether the case was properly before it.* On that question, at least, it was its duty to permit argument, and to take the time required for such consideration as it might need. * * * *Until its judgment declining jurisdiction should be announced, it had authority, from the necessity of the case, to make orders to preserve the existing conditions and the subject of the petition.'* Page 573 of 203 U.S., page 166 of 27 S.Ct., 51 L.Ed. 319, 8 Ann.Cas. 265. *Such orders are not unlawful but lawful orders.*" (Emphasis added).

Being a "lawful order" which was necessary in order to maintain the status quo while the Oklahoma District Court determined its jurisdiction ultimately to issue an injunction against the state court proceedings, the temporary restraining order issued by Judge Barrow was not subject to being challenged in the Mississippi District Court.

A word should also be said with regard to appellee's contention that the proceedings in the Oklahoma District Court did not meet the procedural requirements of Rule 42(b), F.R.Crim.P.[4] sufficiently for the Oklahoma District Court to entertain criminal contempt proceedings and issue the order for appellee's arrest. The Mississippi District Court held that the requisite notice provisions of Rule 42(b) had not been complied with since neither the order to show cause nor the order of arrest issued by the Oklahoma District Court contained the word "criminal." This same contention was raised and rejected in United States v. United Mine Workers of America, supra, where the Supreme Court held that "Rule 42(b) requires no such rigorous application." 330 U.S. at 297, 67 S.Ct. at 698, 91 L.Ed. 884. In the instant case, as in *United Mine Workers*, the petition for the order to show cause charged a willful violation of the restraining order, indicating an intention to prosecute criminal contempt. The affidavit accompanying the petition set forth in detail the acts of appellee which were alleged to constitute a deliberate violation of the restraining order. The order to show cause, together with the petition for the order, was served upon appellee on March 13, 1964. The language used in those documents, especially the characterization in the petition of appellee's action as a

4. Rule 42(b) covers those situations where the criminal contempt is not committed in the actual presence of the court, and provides:

   "*Disposition Upon Notice and Hearing.* A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment."

"wilful, intentional and contemptuous disregard" of the court's order, was clearly sufficient under *United Mine Workers* to inform appellee that criminal contempt was charged.[5] Furthermore, in opening the proceedings on March 14, 1964, Judge Barrow announced that "this is a criminal contempt proceeding." It should also be noted that we are not concerned with a case of conviction for criminal contempt, but only with the sufficiency of the procedures followed by the Oklahoma District Court to bring appellee before it on a criminal contempt charge.

The judgment of the Mississippi District Court is reversed and the cause is remanded with directions to vacate the order discharging appellee from custody.

Reversed and remanded with directions.

---

5. Compare two recent Supreme Court cases, Cheff v. Schnackenberg, 1966, 384 U.S. 373, 86 S.Ct. 1537, 16 L.Ed.2d 629, and Shillitani v. United States, 1966, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622, both decided on June 6, 1966. Both cases indicate that it is the purpose of the contempt proceedings, rather than the name appended to them, which determines whether they are civil or criminal in nature.